WRIGHT, J.,
delivered the opinion of the Court.
This was an action of ejectment, in the Circuit Court of DeKalb county,- in which the plaintiff below had judgment, and the defendant has appealed in. error to this Court.
In deraigning his title the plaintiff was compelled to use and rely upon certain decrees and proceedings had in the Chancery Court at McMinnville, to the reading of which the defendant objected; but the Circuit Court overruled the objection, and permitted the records to be read as a part of the plaintiff’s title.
This is now assigned as error.
The land ■ in controversy had been granted by the State of Tennessee to Thomas Hopldns. He died intestate, leaving a large estate in lands, in various tracts. His heirs-at-law, after his death, in the year 1838, by a decree in the Chancery Court at McMinnville, had partition made of these lands, and the tract in controversy, with others, was allotted to the heirs of Judith Yaughan, a sister of the intestate.
In the same year, and the year following, the children and' heirs of Judith Yaughan, by a decree in the same Court, had partition made of the lands which had been allotted to them, and the tract of land in dispute was assigned to Thomas C. Yaughan, one of the children and heirs of Judith Yaughan.
In the bills and proceedings in both of these causes, certain of the heirs, who then appear to have been infants, were made defendants; and in the transcripts of the records used on the trial of this cause, no subpoenas were found, nor does it appear whether or not any *256 ever issued or existed, or whether said infant defendants were ever served with process, or had notice by publication or otherwise, as required by law. As to this the records are silent. Nor is any order appointing a guardian ad litem found; and in one of the transcripts the answer of the guardian ad litem does not appear.
But in the decrees, in both cases, it is recited that the causes “ came on to be heard, and were heard, before the Chancellor, upon the bill and answer of the minor défendants, by their guardian ad litem, John D. Lusk, when it appearing to the satisfaction of the Court,” &c.: and after stating in the decree the rights and equities of the parties, the Court goes on and decrees the partition.
It is assumed that these decrees are now to be held void for the want of service of process upon these infant defendants.
The defendant, so far as we can see, is a trespasser, and has no interest in the land in dispute; and whether these decrees were, at the time they were made, formal and regular, in no way concerned him. The heirs themselves do not complain, but have acquiesced in these divisions for nearly, or quite twenty years.
The defendant seeks to attack and overturn them collaterally, in order to hold the possession of a tract of land to which he manifestly has no title.
We are of opinion this should not be permitted, and that, as to him, these decrees should be held valid,
A Court of Chancery is a Superior Court within the sense and meaning of the term, as contradistinguished iipom Inferior Court. It has general power and au^thority tp make partition of lands between tenants in ponpnpn.-qj This jurisdiction existed at the common law, *257 and has been declared and recognized by many statutes since. It can in no just sense be claimed that the validity of these decrees shall be tested by the rules applicable to a Court of peculiar, special, and limited authority.
When we see, therefore, that the Court of Chancery at McMinnville had jurisdiction over the subject matter of these decrees, and undertook to, and did declare the rights of the parties — the infant defendants being represented by their guardian ad litem — we should now, in a mere collateral attempt to impeach them — especially after such lapse of time — presume that the defendants were duly served with process, or in some way had the proper notice, so as to give the Court jurisdiction of their persons.
The subpoenas in a cause are not required to be enrolled, and may not be, if they were; and they, with the evidence of notice to bring parties before the Court, may be, and often are, lost and cannot be copied into the transcript. And are we now, in a case like this, to say -there were no subpoenas, or service, or notice of any kind ?
The rule for jurisdiction, as laid down in Peacock v. Bell and Kendal, 1 Saund. R., 74, is, that nothing shall be intended to be out of the jurisdiction of a Superior Court but that which specially appears to be so; and, on the contrary, nothing shall be intended to be within the jurisdiction of an Inferior Court but that which is so expressly alleged.
This rule was adopted by Judge Reese, in da the opinion of the Court in the cases of Brient's Adm'r, v. Hart, and Kilcrease v. Blythe, 6 Hum., 81, 378. *258 And from these cases it will also appear that a Court of Chancery is a Superior Court within the sense of the rule.
The case of Kilcrease v. Blythe, involved a question of jurisdiction as to the person of infant heirs, and, in principle, seems to me to he very analogous to the present case.
From that case it would seem, that where, on the return of process not found, and affidavit of non-residence made, with prayer for the action of the Court to compel the appearance of the defendants, and the record only shows that the Court proceeded to take the hill for confessed, and determined the matter involved without setting forth that this was done after due publication, such decree, though reversible on appeal, is not void. 6 Hum., 378. And, on the same subject, White v. Albertson, 3 Dev., 242; Brown et al. v. Wood, 17 Mass., 72; Britain v. Cowen, 5 Hum., 318, 319; 1 Greenl. Ev., § 19.
We do not mean to question the rule that requires service or notice upon the parties, and that a decree taken contrary to the course of the Court is void. 1 Swan, 484; 2 Swan, 197; 3 Dev., 244.
But we take certain things in this case as evidence that the parties to these decrees were properly before the Court, and that all things were rightfully done.
Judge Resse, in Britain v. Cowen, 5 Hum., 318, 319, after speaking of the struggles of the Chancery Court against technical rules, and of its power, -from its mode of practice, to see, from time to time, that necessary parties are brought before it, and of the crude and inartificial manner in which much of the public business *259 is done, and how incautiously the papers and records pertaining to our Courts are kept, remarks: “We hare strong motives of public policy to cherish substance more than forms, and to hesitate long, and insist upon a clear case, before we pronounce the decrees and judgments of our Courts of Record void, when brought collaterally in question.”
It follows, of course, if the Chancery Court had the proper jurisdiction, that everything also will, in this contest, be taken to have been regular.' 4 Sneed, 871.
The objections to the decree in the case of Harriet Yaughan and others, under which Harrison purchased, have nothing in them.
Judgment affirmed.